[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 879 
¶ 1. The Adams County Chancery Court granted a divorce to October and Anitra Fulton on the grounds of October's habitual cruel and inhuman treatment. Anitra was awarded custody of the children. October appeals, raising the following issues:
 I. WHETHER THE CHANCELLOR PROPERLY GRANTED A DIVORCE ON THE GROUNDS OF OCTOBER'S HABITUAL CRUEL AND INHUMAN TREATMENT
 II. WHETHER THE CHANCELLOR PROPERLY DENIED OCTOBER'S COMPLAINT FOR DIVORCE ON THE GROUNDS OF ADULTERY
 III. WHETHER THE CHANCELLOR'S AWARD OF VISITATION TO OCTOBER WAS PROPER
 IV. WHETHER THE COURT PROPERLY ADMITTED ANITRA'S MEDICAL RECORDS INTO EVIDENCE
 ¶ 2. Finding no error, we affirm.
 FACTS ¶ 3. October and Anitra Fulton were married on May 25, 1999, but they had lived together since May of 1991. The parties had three children, all of whom were born before the marriage. On May 23, 2002, October filed a complaint for divorce on the grounds of irreconcilable differences. Anitra filed a counterclaim, alleging that she was entitled to a divorce based on October's habitual cruel and inhuman treatment. October amended his complaint and alleged that he was entitled to divorce on the grounds of adultery and habitual cruel and inhuman treatment. The Fulton family lived together, and October and Anitra slept in the same bed, until Anitra and the children moved out in late February of 2003.
 ¶ 4. Anitra admitted that she had engaged in an adulterous relationship while she was married to October. The adulterous relationship ended in November of 2001, and in December of 2001 she confessed to her husband that she had an affair and that she had ended it. After Anitra admitted to the affair, the couple continued to live together and eventually resumed sexual relations.
 ¶ 5. Anitra testified that October physically abused her throughout the marriage. Anitra alleged three specific instances of cruel and inhuman treatment. When Anitra was pregnant with her third child, October, then a live-in boyfriend, kicked her from behind and bruised her tailbone. In June of 2002, October scratched the inside of her mouth and hit her in the back. Anitra filed criminal charges against October, to which October pleaded guilty. At trial, Anitra called corroborating witnesses who verified the injuries. In October of 2002, after the divorce had been filed, Anitra saw her husband in a car with Ms. Gaylor, October's girlfriend at the *Page 880 
time, and followed them. When they stopped, Anitra attempted to take a picture of October with Ms. Gaylor. Ms. Gaylor took the camera out of Anitra's hand and hit her. Anitra hit her back, and the two of them started fighting. Ms. Gaylor's friends and sister came to Ms. Gaylor's aid and severely injured Anitra. October watched the incident in his car and did nothing to help. Anitra received treatment for her injuries at a hospital emergency room.
 ¶ 6. The chancellor awarded Anitra a divorce on the grounds of habitual cruel and inhuman treatment and denied October a divorce on all grounds he alleged. Anitra received primary physical custody of their children. October was to have custody on Sundays and Mondays of each week.
I. WHETHER THE CHANCELLOR PROPERLY GRANTED A DIVORCE ON THE GROUNDS OF OCTOBER'S HABITUAL CRUEL AND INHUMAN TREATMENT
 ¶ 7. Conduct that evinces habitual cruel and inhuman treatment must be such that it either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the no-noffending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance. Daigle v. Daigle, 626 So.2d 140, 144
(Miss. 1993). This ground for divorce must be proven by the preponderance of credible evidence. Smith v. Smith,614 So.2d 394, 396 (Miss. 1993). Although the cruel and inhuman treatment usually must be shown to have been systematic and continuous, a single incident may provide grounds for divorce. Rakestraw v.Rakestraw, 717 So.2d 1284, 1287 (¶ 8) (Miss.Ct.App. 1998). A chancellor's finding that this standard of proof is satisfied is subject to an abuse of discretion standard of review. Wright v.Wright, 823 So.2d 586, 587 (¶ 6) (Miss Ct.App. 2002) (citingSnoddy v. Snoddy, 791 So.2d 333, 344 (¶ 43) (Miss.Ct.App. 2001)).
 ¶ 8. Anitra testified to three specific instances of cruel and inhuman treatment on the part of October. One instance occurred before the parties were married and one instance occurred after the parties' separation. Anitra claimed that there were many other instances in which she called the police on October but never pressed charges. October denied that he had ever hit Anitra, but he did admit that he pleaded guilty to a charge of simple assault, and he did admit that he did nothing to help Anitra when his then-girlfriend attacked her.
 ¶ 9. Anitra called three witnesses that were able to verify October's abuse against Anitra. Jeanie Johnson, Anitra's mother, testified that there were two occasions that she saw bruises on Anitra. Christine Green, a close friend of Anitra's, testified that there were many instances in which Anitra called her late at night and talked about the altercations that she had with October. There was one occasion in which Anitra came over to Green's house after an argument with October where she was nervous, extremely upset, and crying. Loretta Herbert, Anitra's cousin, testified that in June of 2002 Anitra called her to take pictures of the bruises Anitra had on her face and scratches she had inside her mouth. Herbert also testified that she visited the Fultons' house several times a month and noticed the tension in the household. Specifically, she noted that October refused to speak to his wife. Herbert also testified that Anitra asked Herbert to take her to the emergency room *Page 881 
when October's then-girlfriend attacked Anitra because October refused to help.
 ¶ 10. Although Anitra testified only to three specific instances of physical abuse on the part of October, and only one instance occurred during the course of the parties' marriage, her own testimony and her corroborating witnesses' testimony demonstrated a pattern of abuse that enabled the chancellor to grant a divorce on the grounds of habitual cruel and inhuman treatment.
II. WHETHER THE CHANCELLOR PROPERLY DENIED OCTOBER'S COMPLAINT FOR DIVORCE ON THE GROUNDS OF ADULTERY
 ¶ 11. Although a complainant is entitled to divorce on the grounds of adultery, the defense of condonation is recognized in our law. Wood v. Wood, 495 So.2d 503, 505 (Miss. 1986). Condonation is the express or implied forgiveness of a marital wrong on the part of the wronged party. Id. The mere resumption of residence does not constitute condonation, and condonation is conditioned on the offending spouse's good behavior. Id.
 ¶ 12. Anitra testified that she ended her adulterous affair in November of 2001 and did not engage in another extramarital relationship after that time. October testified that he tried to make the marriage work after he learned of the affair. He was initially upset about Anitra's affair but resumed sexual relations with her approximately two months after he learned of the affair. Both parties testified that the sexual relations continued until July of 2002.[1] The chancellor was presented with sufficient evidence that October condoned Anitra's adultery.
III. WHETHER THE CHANCELLOR'S AWARD OF VISITATION TO OCTOBER WAS PROPER
 ¶ 13. The chancellor awarded October visitation with his children on Sunday and Monday of each week and at other times that October's schedule permitted and the parties could agree. The chancellor awarded Sunday and Monday visitation because those were October's days off. October claims that the chancellor erred by imposing visitation restrictions on his children and claims that the chancellor erred for allowing his wife to have custody of the children while she is working.
 ¶ 14. Specification of visitation times are within the sound discretion of the chancellor. Cheek v. Ricker, 431 So.2d 1139,1146 (Miss. 1983). In the present case, awarding visitation on the days that October does not work is a logical arrangement. The fact that Anitra has custody of the children on the days she works does not constitute a restriction on October's visitation rights. The testimony as to the parties' work schedules was that October held a night job at a casino while Anitra worked Monday through Friday during the day and was able to take care of the children during the evening. The chancellor placed no restrictions on October's visitation. October is not restricted to supervised visitation or visitation in only one location, nor is he denied overnight visitation. This issue is without merit.
IV. WHETHER THE COURT PROPERLY ADMITTED ANITRA'S MEDICAL RECORDS INTO EVIDENCE
 ¶ 15. When October kicked Anitra during her pregnancy, she obtained *Page 882 
medical care from her obstetrician. She submitted the obstetrician's notes into evidence. She also submitted into evidence the medical records of her emergency room visit and follow-up visit from the altercation involving October's then-girl-friend. October objected to the admission of the medical records because he claims they were not properly authenticated.
 ¶ 16. The Mississippi Supreme Court has held that medical records conducted in the regular course of business are admissible under the business records exception to the hearsay rule. Cassibry v. Schlautman, 816 So.2d 398, 403 (¶ 18) (Miss.Ct.App. 2001) (citing Jones v. Hatchett, 504 So.2d 198,202-03 (Miss. 1987)). Accordingly, such records must be admitted by a witness who is familiar with the contents, terms, and meaning of the record. Flowers v. State, 773 So.2d 309, 322 (¶ 77) (Miss. 2000). In the present case, the medical records were admitted solely through Anitra's testimony. She testified that she went to her respective doctors' offices during the week of trial, that she requested her medical records, and that the records she obtained were the records she wished to submit into evidence. Such testimony does not establish that the medical records submitted into evidence possessed indicia of trustworthiness. Butler v. Pembroke, 568 So.2d 296, 299 (Miss. 1990).
 ¶ 17. "Where corroborative evidence exists and the hearsay evidence is merely cumulative, the admission may be held to be harmless." Young v. State, 679 So.2d 198, 203 (Miss. 1996) (citing Jones v. State, 606 So.2d 1051, 1057 (Miss. 1992)). In the present case, the medical records admitted into evidence were cumulative. Anitra introduced the medical records for the purpose of proving that she was entitled to a divorce on the grounds of habitual cruel and inhuman treatment. She also called witnesses who verified that they had seen bruises on Anitra and who described Anitra's injuries in detail. The admission of Anitra's medical records was harmless error.
 ¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF ADAMS COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
[1] The testimony is conflicting as to when the sexual relations ceased. October testified that he was not intimate with Anitra after July of 2002. Anitra testified that the parties continued sexual relations until she moved away from the marital domicile in early 2003.