GRIFFIS, P.J.,
for the Court:
¶ 1. This case considers whether the chancellor erred in the divorce judgment of Shandera and Timmy Gillespie. Shand-era argues that the chancellor erred when he: (1) granted Timmy a divorce based on habitual cruel and inhuman treatment, (2) granted Timmy a divorce on the ground of adultery, (3) awarded Timmy half of Shandera’s retirement account, and (4) failed to make adequate findings of fact and conclusions of law when he divided the marital property. We affirm as modified the grant of a divorce and affirm as to all other issues.
FACTS
¶ 2. Shandera and Timmy Gillespie were married for fourteen years. They separated in September 2010. They have a daughter, Meagan.
¶ 3. On October 1, 2010, Timmy filed a complaint for divorce. Timmy asked for a divorce on the fault grounds of cruel and inhuman treatment and adultery. Timmy asked for a divorce, division of the marital property, custody of Meagan, child support, and other relief.
¶ 4. At the hearing, Timmy testified that Shandera struck him with her fist, a broom, and a coat hanger. She also cut him and the top of his convertible with a knife. On one occasion, Meagan called 911 when Shandera hit Timmy.
¶ 5. James Moss testified that he saw bruises around Timmy’s eyes and on his arms. Although he did not see Shandera inflict the wounds that caused Timmy’s bruises, Moss testified that Timmy told him that Shandera had hit Timmy with something and that caused the bruises.
¶ 6. Timmy also introduced a ticket for a cruise that Shandera went on with Lavelle McCollough. He also introduced a Mother’s Day card given to Shandera by La-velle that said: “I Love the way you do your do, I love your sexy smile, I love your classy wardrobe, too, and your cool and sassy style for me you’ll always be ‘the one’ who just can’t be replaced, yes, love, when all is said and done I’ve really got good taste.”
¶ 7. Timmy introduced pictures of La-velle and Shandera hugging. Timmy offered evidence that LaveEe sent flowers to Shandera. Lavelle admitted in his deposition that he provided Shandera with a cell phone. However, he explained he gave her the cell phone so that his security-system provider would have someone to contact if it was necessary.
¶ 8. Lavelle testified in his deposition that he met Shandera through her employment at the University of Tennessee Cancer Institute, when she took care of his wife, who had cancer. After his wife passed away, Shandera took care of La-velle’s home while he was away. Lavelle and Shandera argued that the cruise ticket was originally purchased for Lavelle’s wife. After her death, Lavelle gave the ticket to Shandera in appreciation for taking care of his house. Lavelle insisted they did not engage in a sexual relationship during the *872 trip. They also did not stay in the same room.
¶ 9. Lavelle admitted in his deposition he sent flowers and cards to Shandera. However, he claimed that his actions were not those of a lover but rather an appreciative friend. Furthermore, he asserted the pictures that showed him in an embrace with Shandera simply depicted a hug between friends.
¶ 10. Timmy also introduced as evidence photographs of underwear with the phrase “army booty.” Shandera objected and stated that she purchased the underwear herself. Timmy claimed that the underwear was a gift to Shandera from Lavelle.
¶ 11. A letter from a paramour was also introduced. In this letter, the paramour stated he enjoyed “snuggling” and other forms of intimacy with Shandera. Shand-era objected to the admission of the letter into evidence and stated she had nothing to do with the letter.
STANDARD OF REVIEW
¶ 12. We “will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]” Samples v. Davis, 904 So.2d 1061, 1064 (¶ 9) (Miss.2004) (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)). Also, “[w]e will not reverse a[c]hancellor’s findings of fact where they are supported by substantial credible evidence in the record.” Id. (quoting Hammett v. Woods, 602 So.2d 825, 827 (Miss.1992)).
ANALYSIS

1. The chancellor erred when he granted Timmy a divorce based on cruel and inhuman treatment.

¶ 13. Habitual cruel and inhuman treatment as a ground for divorce must be proved by a preponderance of credible evidence. Chamblee v. Chamblee, 637 So.2d 850, 859 (Miss.1994). This Court has stated:
Conduct that evinces habitual cruel and inhuman treatment must be such that it either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the nonoffend-ing spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Fulton v. Fulton, 918 So.2d 877, 880 (¶ 7) (Miss.Ct.App.2006) (citation omitted). Generally, the “cruel and inhuman treatment must be shown to be routine and continuous; however, a single occurrence may be [sufficient] for a divorce on this ground.” Boutwell v. Boutwell, 829 So.2d 1216, 1220 (¶ 14) (Miss.2002) (citations omitted).
¶ 14. In Chamblee, the supreme court addressed the requirement that the claims of cruel and inhuman treatment be corroborated by a witness. Chamblee, 637 So.2d at 860. The court noted that the wife produced only one corroborating witness. Id. The witness simply observed the presence of bruises on the wife’s arm and had no independent knowledge of how they got there. Id. Finally, the husband denied abusing the wife. Id. For these reasons, the court determined the chancellor did not err when he denied the wife a divorce on the ground of cruel and inhuman treatment because she failed to prove her case by a preponderance of the evidence. Id.
¶ 15. In Fulton, 918 So.2d at 880-81 (¶¶ 9-10), the wife produced three wit *873 nesses to corroborate her claim that her husband abused her. Id. at 880 (¶ 9). Her mother testified she observed bruises. Id. Also, a friend testified that on many occasions the wife called late at night to discuss the altercations between her and her husband. Id. Finally, a cousin testified she took pictures of the wife’s bruises and scratches in her mouth. Id. The cousin also observed tension in the household when she visited. Id. This Court determined that this evidence was sufficient to grant a divorce based on cruel and inhuman treatment. Id. at 881 (¶ 10).
¶ 16. Here, Timmy offered one witness, James Moss, to corroborate his claim of cruel and inhuman treatment. Moss observed bruises on Timmy but had no independent knowledge of how Timmy had received the bruises. Moss’s testimony was based not on his own knowledge or information but on what Timmy had told him.
¶ 17. Timmy also claims that Meagan observed an attack. But, Meagan did not testify to corroborate his claim.
¶ 18. No corroborating witness, with independent knowledge of the instances of cruel and inhuman treatment, testified to establish the claim of cruel and inhuman treatment. As a result, we find that the chancellor’s finding of grounds for a divorce due to cruel and inhuman treatment was not supported by substantial credible evidence in the record. Nevertheless, because we affirm the chancellor as to the grounds of adultery in the following section, this decision does not affect the outcome of this appeal.

2. The chancellor did not err when he granted Timmy a divorce on the ground of adultery based on circumstantial evidence.

¶ 19. To prove adultery as a ground for divorce, the plaintiff “must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination.” Dillon v. Dillon, 498 So.2d 328, 330 (Miss.1986) (citations omitted). The plaintiff may show “either an infatuation for a particular person of the opposite sex or a generally adulterous nature on the part of the defendant.” Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996) (quoting McAdory v. McAdory, 608 So.2d 695, 700 (Miss.1992)). The plaintiff may use circumstantial evidence rather than direct evidence due to the secretive nature of adultery. Id. (citation omitted). However, “the evidence must be logical, tend to prove the facts charged, and be inconsistent with a reasonable theory of innocence.” Id. (citing Owen v. Gerity, 422 So.2d 284, 287 (Miss.1982)); see also Banks v. Banks, 118 Miss. 783, 787-88, 79 So. 841, 842 (1918).
¶ 20. The Mississippi Supreme Court affirmed a chancellor’s determination that a wife possessed an adulterous inclination, and a divorce based on adultery was justified. Hassett v. Hassett, 690 So.2d 1140, 1148 (Miss.1997). She had received numerous cards from a man who was not her husband. Id. at 1147. A witness also saw her enter and exit a hotel room with the same man. Id. at 1144. Furthermore, she could not offer any reasonable innocent explanation for her conduct. Id. at 1148. She simply denied the incidents had occurred. Id.
¶ 21. The facts in Hassett are very similar to the evidence in this case. Shandera received cards from Lavelle. She admitted she went on a cruise with Lavelle. She also had a letter from a paramour, which appears to describe their intimate activities. Shandera did not offer a reasonable explanation of innocence. Instead, she simply denied she had anything to do with the letter in her objection when the letter was admitted.
¶ 22. Following Hassett, we find that there was substantial credible evidence in *874 the record to support the chancellor’s decision to grant a divorce on the ground of adultery based on the finding that Shand-era had an adulterous inclination or an infatuation with a particular person as well as an opportunity to satisfy that inclination or infatuation. Accordingly, we find no error in the chancellor’s decision to grant Timmy a divorce on the ground of adultery.

3.The chancellor did not err when he divided the marital property.

¶23. The Mississippi Supreme Court has set forth the following guidelines for equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).
¶ 24. The supreme court has established that when a chancellor divides marital property, he must follow the Ferguson guidelines and make factual findings as to their application. Lee v. Lee, 78 So.3d 326, 329 (¶ 10) (Miss.2012) (citations omitted). The court has noted it is not necessary to “make ‘findings as to each and every factor set forth in Ferguson [.] ” Id. (quoting Weathersby v. Weathersby, 693 So.2d 1348, 1354 (Miss.1997)). Furthermore, “failure to make an explicit factor-by-factor analysis does not necessarily require reversal where we are satisfied the chancellor considered the relevant facts.” Seghini v. Seghini, 42 So.3d 635, 641 (¶ 21) (Miss.Ct.App.2010) (citation omitted).

A. The chancellor did not err when he determined Timmy substantially contributed to the accumulation of marital property and was entitled to a division of marital assets.

¶ 25. The first issue is whether the chancellor committed manifest error *875 when he determined Timmy directly or indirectly contributed to the acquisition of marital property. In Ferguson, the court stated that a spouse will be deemed to have materially contributed “by virtue of domestic services and/or earned income which both parties have enjoyed rather than invested[.]” Ferguson, 639 So.2d at 934. The court observed that the spouse who did not have a retirement account could have been investing funds for retirement purposes or working outside the home to set aside funds for retirement. Id. In such cases, it is appropriate to divide the retirement fund between both spouses because both parties have materially contributed to the retirement fund in some fashion. Id.
¶ 26. In the bench opinion, the chancellor determined that Timmy had been actively involved in raising Meagan and concluded that Timmy had contributed equally and was entitled to a division of the marital assets. Timmy had a right to equitable division of the retirement account because the in-kind and financial contributions of the spouse without a retirement account constitute material contribution. The chancellor’s finding is consistent with Ferguson and, as such, is not manifest error.

B. The chancellor made adequate findings of fact when he divided the marital ‘property.

¶ 27. The next issue is whether the chancellor made adequate findings of fact when he divided the marital property. In Lee, the chancellor mentioned Ferguson in his ruling from the bench, but he did not apply the factors or make factual findings and conclusions of law. Lee, 78 So.3d at 329 (¶ 11). Also, in the final divorce decree, the chancellor failed to mention Ferguson or apply its guidelines. Id. The Mississippi Supreme Court determined this constituted reversible error. Id. at 329-30 (¶ 14).
¶ 28. Here, we find that the chancellor sufficiently referenced the Ferguson factors in his analysis. The chancellor’s bench opinion sufficiently referenced the Ferguson factors and indicates the chancellor considered and applied the factors in his award. The chancellor ordered Timmy to provide Shandera with a Qualified Domestic Relation Order for her to sign so that neither party would incur any tax liability from the other; but this order was stricken from the final judgment. The chancellor also made one factual finding that pertained to the factor for the substantial contribution to the accumulation of property. The chancellor noted that Timmy had taken an active role in raising Meagan and, as such, contributed equally to the accumulation of property.
¶ 29. Shandera asks this Court to reverse the chancellor’s findings and argues that this case is closely analogous to Lee. While the chancellor acknowledged his duty to apply the factors set forth in Ferguson, the chancellor did make the minimal requisite factual findings. Accordingly, we do not find that the chancellor committed manifest error, and we find no merit as to this issue.

C. The chancellor did not err when he awarded Timmy half of the contents of Shandera’s retirement account.

¶ 30. Finally, Shandera contends the chancellor erroneously found the value of her retirement account to be $38,000. She argues the chancellor also erred when he considered evidence that she owned a savings account that contained approximately $9,000.
¶ 31. This Court will not reverse a chancellor’s determination of fact when supported by substantial credible evidence in the record. Crow v. Crow, 622 So.2d 1226, 1228-29 (Miss.1993) (citations omitted). Even if an amount is vague and *876 imprecise, this Court will not determine the chancellor erred if no other direct evidence was available as to the amount. Id. at 1229 (citing Brown v. Gillespie, 465 So.2d 1046, 1047 (Miss.1985)).
¶ 32. Timmy offered evidence that established Shandera had a savings account in the amount of $9,466.48. Shandera disputed this evidence at trial and also does so on appeal. She asserted she did not possess a savings account that contained that amount. However, no other direct evidence was available that contradicted the amount Timmy claimed was in the savings account. The chancellor is in the best position to determine witnesses’ credibility and the weight of the evidence. Crow, 622 So.2d at 1229 (citation omitted). Furthermore, the chancellor’s factual determinations are afforded a great deal of deference. Id. As to the award of the savings account, we find no error.
¶ 33. As to the retirement account, Timmy produced evidence from Trustmark Bank that Shandera’s retirement account contained $35,273.68 invested in a certificate of deposit earning interest at the rate of 2.96%. The statement presented to the chancellor was dated December 31, 2010, which was more than six months before the final judgment. However, the final divorce judgment established the retirement account contained $38,000. In the chancellor’s judgment, he granted Timmy half of the account and awarded Timmy $19,000. Shandera is correct that the record does not support the conclusion that the account was valued at the exact amount of $38,000. There was evidence the account was valued at $35,273.68, and there was evidence that interest had accrued since the statement that was presented to the chancellor. The chancellor did not discuss how he arrived at a valuation of approximately $2,700 greater than the evidence.
¶ 34. While we prefer preciseness when dealing with financial matters, we must recognize that the chancellor’s final judgment considered additional interest to have accrued in the period from the hearing until the final judgment. The chancellor’s award, in the final judgment, that “the parties shall divide the IRA account (originally with Trustmark Bank in the approximate amount of ... $38,000[,] with the Husband receiving approximately ... $19,000.00,” is an instruction that the account is to be divided equally, or as close thereto as possible. The chancellor’s final judgment used language that should be reasonably interpreted by Shandera, Timmy, and the financial institution to divide the funds of the account equally. In the event of any dispute, the financial institution is to write a check to Timmy in the amount of $19,000. Now that this matter has continued for an additional year and a half, the account may be worth more than $38,000. Regardless, the chancellor’s judgment would be sufficient to make sure that the funds in the account are divided equally based on the amount that was in the account on the day of the final judgment, together with any additional interest that has accrued on such amount. We cannot find the chancellor in error for his use of an approximation. We find no error and affirm.
CONCLUSION
¶ 35. We affirm as modified the chancellor’s decision to grant a divorce to Timmy based on the ground of adultery, and we affirm the chancellor’s division of marital property.
¶ 36. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*877 LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.