**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**
**NO. 2014-CA-00633-COA**

**W.S. STUCKEY JR., SPECIAL CONSERVATOR**                     **APPELLANT**
**OF THE PERSON OF LILA B. WAID**

**v.**

**HERMAN A. WAID**                                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2014 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | W.S. STUCKEY JR. |
| ATTORNEY FOR APPELLEE: | KINNEY M. SWAIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S COMPLAINT FOR DIVORCE |
| DISPOSITION: | AFFIRMED: 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Lila Waid appeals the Humphreys County Chancery Court's denial of her complaint for divorce. Specifically, she argues that the court should have granted her a divorce on the ground of adultery. Finding that the chancellor acted within her discretion in denying Lila's complaint, we affirm.

**FACTS**

¶2.     Lila married Herman Waid in December 2002. This was Herman's second marriage and Lila's third. Both had children with their first spouses. At the time of trial, Lila and

Herman lived together in the marital home but occupied separate bedrooms.

¶3. On April 2, 2009, the Humphrey County Chancery Court determined Lila to be incompetent. The court appointed Patricia Abraham, Lila's daughter from her first marriage, and Herman as co-conservators of Lila's person. A local certified public accountant was appointed as conservator of Lila's estate.

¶4. In 2012, Patricia suspected that Herman was having an affair. So, as a co-conservator, she filed a complaint for divorce against Herman on the ground of adultery. Herman filed a motion to dismiss. The chancellor appointed W.S. Stuckey Jr. as a special conservator, since both Patricia (as heir of her mother) and Herman had a conflict of interest. Stuckey was ordered to evaluate Patricia's claims and file for divorce if necessary.

¶5. After investigation, Stuckey filed an amended complaint for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and, in the alternative, irreconcilable differences. The complaint also requested the court to remove Herman as co-conservator of Lila's person and to require Herman to pay for damages to the marital home.

¶6. The chancellor bifurcated the trial and tried grounds first. Lila did not appear in court, due to her "end stage" Alzheimer's disease. Herman, eighty-four at the time of trial, has had Parkinson's disease since they married. He testified that his and Lila's relationship declined in 2008, when Lila started having seizures. In 2009, they stopped sharing a bedroom. Herman also testified that he became impotent in 2009, but that he and Lila continued a "sexual relationship" until around 2011. Because of her failing health, Lila had caregivers

2

twenty-four hours a day, seven days a week.

¶7. In 2012, Herman rekindled a relationship with J.K.,[1] eighty-two and widowed. Herman had known her for over forty years. He stated that they never had a romantic relationship. J.K. knew Herman was married. Herman often invited J.K. and another couple (the Harringtons) over to play cards. After Mr. Harrington died, Herman and J.K. started seeing more of each other. Herman would go over to J.K.'s house four or five times a week. He was either taken by his caregiver, or picked up by J.K. When J.K. visited Herman, they often spent time in his bedroom.

¶8. Herman testified that he and J.K. slept in the same bed on occasion, but they never had sexual intercourse. J.K. similarly testified that they never had intercourse, although she wished their relationship was more than friendship.

¶9. Lila's caregivers testified about Herman's relationship with both Lila and J.K. Once Herman befriended J.K., he and Lila grew further apart. The caregivers also provided eyewitness testimony as to what happened during Herman and J.K.'s time together. None testified to witnessing sexual intercourse between Herman and J.K.

¶10. Patricia testified that she once saw J.K. in Herman's room, sitting on the side of his bed. Herman was lying down. According to Patricia, J.K. had her hand on Herman's leg. They were both fully clothed.

¶11. Dr. Mack Gorton, Herman's doctor, did not appear in court, but the parties stipulated

---

[1] J.K.'s name has been abbreviated to ensure confidentiality.

that his deposition be admitted into evidence. Dr. Gorton had been treating Herman since 1978 for issues ranging from respiratory infections to hip injuries. In March 2013, during a routine checkup, Herman told Dr. Gorton that he had erectile dysfunction. Herman never asked Dr. Gorton for any medication to treat the problem. No other evidence was presented to show that Herman had been treated by another doctor for his impotency.

¶12.    At the close of trial, the chancellor filed a twelve-page judgment denying Lila's request for divorce. Lila appealed.

## STANDARD OF REVIEW

¶13.    "This Court's standard of review in domestic[-]relations matters is extremely limited." *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010). We "will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal[.]" *Samples v. Davis*, 904 So. 2d 1061, 1064 (¶9) (Miss. 2004). We review questions of law de novo. *George v. George*, 22 So. 3d 424, 427 (¶4) (Miss. Ct. App. 2009).

## DISCUSSION

¶14.    Our supreme court has explained that, to commit adultery, a married person must have sexual intercourse with a person other than his or her spouse. *Owen v. Gerity*, 422 So. 2d 284, 287 (Miss. 1982). Adultery may be proven by either direct evidence or, because of its "secretive nature," circumstantial evidence. *Dillon v. Dillon*, 498 So. 2d 328, 330 (Miss. 1986). To prove adultery by circumstantial evidence, the plaintiff must provide clear and

4

convincing evidence supporting a finding of: (1) an adulterous inclination, and (2) a reasonable opportunity to satisfy that inclination. *Atkinson v. Atkinson*, 11 So. 3d 172, 177 (¶20) (Miss. Ct. App. 2009) (citation omitted). Establishing adultery requires "showing either an infatuation with a particular person or a general adulterous propensity." *Reynolds v. Reynolds*, 755 So. 2d 467, 469 (¶7) (Miss. Ct. App. 1999) (citing *Holden v. Frasher-Holden*, 680 So. 2d 795, 798 (Miss. 1996)). "Where adultery is alleged, the chancellor is required to set forth specific findings of fact and conclusions of law in this regard." *Id*.

¶15. Here, the chancellor made the following findings of fact:

> According to Dr. Gorton's deposition, while treating Herman for another fall, upon questioning by [Dr.] Gorton in 2013, as to whether he could achieve an erection, Herman replied that he could not . . . . [T]his is part of his medical history.

> Based upon the uncontradicted testimony and medical evidence, Herman is impotent, having become so around 2009. Herman denies having sexual intercourse with J.K. or anyone other than Lila since his marriage to Lila. . . .

> J.K. suffers from short-term memory loss . . . . [She] denied having sexual intercourse with Herman[;] she also denied oral sex and touching him in a sexual manner . . . . [S]he was asked repeatedly about having sexual relations with Herman and did not remember ever doing so. Upon being pressed, she admitted that it is possible she had sex and didn't remember, but she didn't think she had . . . .

> [O]ne of the sitters testified[] that . . . [s]he ha[d] seen J.K. at the house but described her visit[s] as just coming and going . . . . [She] did not see [Herman's] door closed . . . .

> [One sitter] related an incident of Herman and J.K. being in Herman's room

5

when she knocked on his door in an effort to close up the house for the night . . . . [When] she knocked on the door[,] . . . Herman opened the door and J.K. jumped off the bed with her blouse open. When Herman answered the door[,] he was wearing short pants with his front part exposed.

[Another sitter] never saw any affection between Herman and J.K.

The chancellor also found Patricia's testimony about Herman and J.K.'s activity in his bed "highly suspect," since Herman's hospital bed was only thirty-six to thirty-seven inches wide. The chancellor further stated, "There is no direct proof of sexual intercourse between Herman and J.K." Based on the circumstantial evidence presented, the court found Lila failed to show Herman had any "adulterous inclination" towards J.K. She stated that Herman and J.K. "are two lonely people of advanced age who enjoy each other's company." The court further found that Lila had failed to prove by clear and convincing evidence that Herman could engage in sexual intercourse.

¶16. We find there was substantial evidence to support the chancellor's finding. Herman and J.K. both testified that their relationship was not romantic. They admitted to staying together overnight, but there was no evidence of a sexual relationship. *See Atkinson*, 11 So. 3d at 176-77 (¶19) (finding that cohabitation does not prove adultery by clear and convincing evidence). None of the conduct described in the eyewitness testimony meets the definition of adultery. *See Owen*, 422 So. 2d at 287. Further, the chancellor was presented with uncontradicted evidence of Herman's impotence, which would make it impossible for him to satisfy any inclination.

¶17. As the judge of credibility, the chancellor is entitled to choose between reasonable

6

interpretations of the evidence and the inferences that may be drawn therefrom. *Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008). The evidence of record is facially sufficient to support a finding of adultery, as stated in the dissent. But the evidence is, likewise, facially sufficient to support a finding that adultery did not take place. The trier of fact is not this court but the chancellor, who heard the testimony of the witnesses, determined their credibility, weighed that and other evidence, and made a decision within her discretion. After viewing the record, we are therefore satisfied that the chancellor did not abuse that discretion, was not manifestly wrong, was not clearly erroneous, and applied the proper legal standard in making her decision. We thus affirm.

¶18. **THE JUDGMENT OF THE CHANCERY COURT OF HUMPHREYS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶19. Our precedent establishes that, to prove adultery, it is sufficient for the plaintiff to show by clear and convincing evidence that an adulterous inclination or an infatuation with a particular person exists, as well as the opportunity to satisfy that inclination or infatuation. *See Hassett v. Hassett*, 690 So. 2d 1140, 1147 (Miss. 1997); *McAdory v. McAdory*, 608 So. 2d 695, 700 (Miss. 1992); *Gillespie v. Gillespie*, 106 So. 3d 869, 873 (¶19) (Miss. Ct. App. 2013); *see also Brooks v. Brooks*, 652 So. 2d 1113, 1118-19 (Miss. 1995) (rejecting the

7

husband's claim of impotency where the evidence sufficiently established the husband's inclination or infatuation with another woman and the circumstantial evidence sufficiently established a sexual relationship).

¶20.   Based on a review of the facts in this case and relevant Mississippi precedent, I respectfully dissent from the majority's opinion.