# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00758-COA

**JOSEPH ERIC WILLIAMS**                                                 **APPELLANT**

**v.**

**BRITTNEY E. WILLIAMS**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/04/2021 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY BIRL RIMES |
| ATTORNEY FOR APPELLEE: | SABRINA D. HOWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 03/14/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND SMITH, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Joseph ("Eric") Williams appeals from the Grenada County Chancery Court's judgment of divorce, claiming that the chancellor erred in her valuation of the marital residence. We affirm the chancellor's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     Eric and Brittney Williams were married in 2014, and they separated in 2019 after their minor child made an allegation of sexual abuse against Eric. In September 2019, Brittney filed a complaint for divorce, and Eric later filed a counterclaim for divorce. An agreed temporary order was entered providing, among other things, that Brittney would have exclusive use and possession of the marital residence. During that time, Eric made the mortgage payment, and Brittney paid for utilities and maintenance costs.

¶3.     At trial in April 2021, the parties consented to a divorce on the ground of irreconcilable differences. The parties agreed that Brittney would have physical custody of their three children subject to visitation and that they would share joint legal custody. However, the parties asked the chancellor to, among other things, classify and divide their assets and debts, including the marital residence.

¶4.     During the trial, Brittney testified that she and Eric had lived in the marital residence since it was built. Brittney testified that they obtained a construction loan for an addition to the residence, and the November 2018 closing disclosure was later admitted into evidence.[1] According to the closing disclosure, the appraised value of the marital residence was $150,000. Brittney also testified that the value of the residence at the time of trial was $150,000. When Brittney was asked if her opinion regarding the value of the residence was based on the closing disclosure, however, she said, "It [was] not," and that she had had the marital residence appraised.

¶5.     Eric testified that the property on which the marital residence was situated was purchased in 2011, and the marital residence was built in 2012. According to Eric, he had a "construction background" and was involved in the construction of the marital residence and the subsequent addition.[2] Eric testified that he believed that the value of the residence

---

[1] The addition consisted of a bedroom and a sunroom and was approximately 500 square feet.

[2] According to Eric, he had "a lot of sweat equity" in the marital residence. He testified that he had been involved in the demolition as well as the installation of insulation, windows, cabinets, flooring, trim, plumbing, and electrical. It was not entirely clear, however, when Eric was referring to the construction of the marital residence as opposed to the subsequent addition. He also testified that he added a sidewalk, driveway, and a deck

at the time of trial was $189,000 based on an appraisal that was done after the addition was completed. Opposing counsel objected to the admission of the appraisal or any reference to the value contained in the appraisal on the basis that the appraisal had not been provided in discovery and that it constituted hearsay. The chancellor sustained the objection.

¶6.    Eric's attorney asked him to respond to Brittney's testimony that the marital residence was valued at $150,000. According to Eric, the value of the marital residence had increased by $39,000 after the addition was completed. He later testified, however, that he had not been to the marital residence in approximately nineteen months, so he did not know if it had depreciated in value.

¶7.    On cross-examination, Eric acknowledged that the closing disclosure valued the marital residence at $150,000, but he seemingly asserted that the closing disclosure did not reflect the increased value of the marital residence after the addition was completed. He also acknowledged that he stated that the value of the marital residence was $168,000, in his initial Rule 8.05 financial disclosure from January 2020. *See* UCCR 8.05. Eric testified that he must have inadvertently flipped the "8" and flipped and inverted the "6" from what he believed was the true value of the marital residence—$189,000. Finally, Eric indicated that he used at least a portion of the construction loan to pay for attorney's fees.

¶8.    In her bench ruling, the chancellor stated that she had considered Brittney's testimony and evidence as well as Eric's Rule 8.05 financial disclosure in determining the value of the marital residence. The chancellor specifically noted that Brittney submitted evidence that

to the property.

3

the residence had been appraised at $150,000, while Eric's testimony that the residence was worth more was inadmissible. The chancellor found that the value of the marital residence was $150,000, which she based on "the [credible] testimony" that was presented at trial.

¶9. In May 2021, the chancery court entered a final written judgment of divorce. Among other things, the chancellor awarded exclusive use, possession, and ownership of the marital residence to Brittney. Additionally, the chancellor restated that the value of the residence was $150,000 and noted that it had a mortgage balance in the amount of $69,000. "In order to compensate for the disparity in the assets and debts awarded to each party," the chancellor awarded Eric $18,500 from the equity in the marital residence.

¶10. Subsequently, Eric filed a motion to alter or amend the judgment arguing, among other things, that the chancellor erred in her valuation of the marital residence. At the hearing on Eric's motion, the chancellor mentioned that she did not "remember . . . every fact and every minutia of testimony from [trial] because [it had] been some while ago . . . ." However, she recalled that she had considered the testimony, and she recalled that she had ruled that Eric's appraisal was inadmissible. The chancellor noted that the only appraisal that was in evidence was the closing disclosure, which indicated that the marital residence had a value of $150,000. Then the chancellor stated:

> [I]f I remember correctly, the testimony was that this was done so that they could make the addition, so thus, it included the extra valuation for the proposed addition in that appraisal. And maybe there wasn't testimony to that. Maybe it was just from my own experience of making an addition to a house recently that I had to have an appraisal including the addition so that the bank would know how much money would be loanable because my little house without the addition was not going to appraise for enough money to get the loan that I needed. *But, regardless,* I am going to deny your [m]otion as to the

4

[valuation of the] house.

(Emphasis added).  After the chancellor denied Eric's motion, he appealed.

## STANDARD OF REVIEW

¶11.    This Court "will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal [standard]." *Stuckey v. Waid*, 195 So. 3d 872, 875 (¶13) (Miss. Ct. App. 2016) (quoting *Samples v. Davis*, 904 So. 2d 1061, 1064 (¶9) (Miss. 2004)).  However, questions of law are reviewed de novo. *Id*.

## DISCUSSION

¶12.    Eric claims that the chancellor's valuation of the marital residence was against the weight of the evidence.  Specifically, he argues that the chancellor did not consider the increased value that resulted from the addition to the residence and that the chancellor's valuation was based on her "own experience," rather than evidence in the record.

¶13.    This Court has held that "it is incumbent upon the parties, not the chancellor, to prepare the evidence needed to clearly make a valuation judgment." *Warner v. Warner*, 341 So. 3d 152, 161 (¶26) (Miss. Ct. App. 2022) (quoting *Norwood v. Norwood*, 305 So. 3d 175, 178 (¶13) (Miss. Ct. App. 2020)).  "When a chancellor makes a valuation judgment based on proof that is less than ideal, it will be upheld as long as there is some evidence to support her conclusion." *Id*. (quoting *Messer v. Messer*, 850 So. 2d 161, 170 (¶43) (Miss. Ct. App. 2003)).  "A chancellor's findings on valuation 'may be accomplished by adopting the values cited in the parties' 8.05 financial disclosures, in the testimony, or in other evidence.'" *Id*.

5

(quoting *Marter v. Marter*, 95 So. 3d 733, 739 (¶20) (Miss. Ct. App. 2012)).

¶14.   In her bench ruling, the chancellor mentioned that she had considered Brittney's testimony in determining the value of the marital residence.  Brittney testified and her Rule 8.05 financial disclosure indicated that she believed the residence was worth $150,000.  The chancellor also mentioned that she considered Eric's Rule 8.05 financial disclosure.  Eric's testimony and his updated Rule 8.05 financial disclosure indicated that he believed the value of the marital residence was $189,000.  However, he indicated in his initial Rule 8.05 financial disclosure that the value of the marital residence was $168,000.  Additionally, the chancellor noted that the closing document indicated that the house had been appraised for $150,000.  On the other hand, Eric's proof that the residence was worth more was inadmissible.  While it may have been preferable for the chancellor to base her decision on appraisals from both parties, it is not the chancellor's responsibility to prepare the evidence needed to clearly make a valuation judgment.  We find that the chancellor's valuation was based on evidentiary support in the record and not manifestly wrong; therefore, it will be upheld.  *Cf. Pruitt v. Pruitt*, 144 So. 3d 1249, 1252 (¶11) (Miss. Ct. App. 2014).

¶15.   It is true that "[t]he chancellor is not . . . permitted to go outside the record to look for better evidence."  *Warner*, 341 So. 3d at 161 (¶28) (quoting *Stroh v. Stroh*, 221 So. 3d 399, 411 (¶38) (Miss. Ct. App. 2017)).  At the hearing on Eric's post-trial motion, the chancellor noted that the only appraisal that was in evidence indicated that the marital residence had a value of $150,000.  As previously noted, then the chancellor stated:

> [I]f I remember correctly, the testimony was that this was done so that they could make the addition, so thus, it included the extra valuation for the

proposed addition in that appraisal. And maybe there wasn't testimony to that. Maybe it was just from my own experience of making an addition to a house recently that I had to have an appraisal including the addition so that the bank would know how much money would be loanable because my little house without the addition was not going to appraise for enough money to get the loan that I needed. *But, regardless,* I am going to deny your [m]otion as to the [valuation of the] house.

(Emphasis added). At the outset of the hearing, the chancellor was clear that she did not "remember . . . every fact and every minutia of testimony from [trial] because [it had] been some while ago . . . ." Nevertheless, she recalled that she considered the testimony and that she had ruled Eric's appraisal was inadmissible. In other words, the chancellor's ruling was based on more than the appraisal in the closing disclosure. Additionally, although the chancellor suggested that she may have been relying on her own experience when she recalled that the appraisal in the closing disclosure included the value of the addition to the house, she concluded by saying that she would deny the post-trial motion "regardless." As discussed, we find that the chancellor's valuation, which was clearly established in her initial bench ruling, was based on evidentiary support in the record. Therefore, we will not reverse the judgment.

¶16. Finally, Eric suggests that the chancellor erred in her distribution of the marital property by not considering the equity in the marital residence that he accumulated before the marriage as well as the fact that he made the mortgage payments after the parties separated. Under our rules of appellate procedure, "[e]ach issue presented for review shall be separately numbered in the statement [of issues]" and "[n]o issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option,

7

notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). Although Eric included a "statement of the issues" in his appellate brief, the only identified issue was whether the chancellor erred in her valuation of the marital residence.

¶17. Notwithstanding the procedural bar, we note that the chancellor considered Eric's testimony that he had "a lot of sweat equity" in the marital residence. But the chancellor found that while Eric may have been contributing to the marital residence, Brittney "was taking care of the kids and doing the household things so that [he] could be free to do that. And that was beneficial to all of the family because [the] house . . . probably cost . . . less . . . financially . . . because [he was] able to do that." For these reasons, we decline to reverse the chancery court's judgment.

¶18. **AFFIRMED.**

   **BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**