# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00712-COA

**WENDI DOW LITTON**                                             **APPELLANT**

**v.**

**WILLIAM POWELL LITTON, III**                                  **APPELLEE**

DATE OF JUDGMENT:              06/14/2022
TRIAL JUDGE:                   HON. WATOSA MARSHALL SANDERS
COURT FROM WHICH APPEALED:     COAHOMA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       T. SWAYZE ALFORD
                               KAYLA FOWLER WARE
ATTORNEYS FOR APPELLEE:        MITCHELL D. MOSKOVITZ
                               CHARLES JONES SWAYZE III
                               CHARLES J. SWAYZE JR.
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 10/03/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     William Powell Litton III (Powell) filed a petition against his ex-wife Wendi Dow Litton (Wendi) in the Coahoma County Chancery Court. Powell requested that his tie-breaking authority over extracurricular activities for the parties' minor children be upheld and that the chancellor find Wendi in willful contempt of a prior agreed order. The chancellor concluded that summer camps qualify as extracurricular activities and therefore fall under Powell's tie-breaking authority as specified in the prior agreed order. Wendi appeals from the chancellor's order. Finding no error, we affirm.

## FACTS

¶2.     The parties married in 2007.  They had two minor children during their marriage: a son born in 2008 and a daughter born in 2012.  In 2014, Powell filed for divorce.  Wendi answered and filed a counter-claim for divorce.  After their various filings, the parties entered an agreed order in which they mutually consented to an irreconcilable-differences divorce.  The parties also agreed to have the chancellor determine all matters related to child custody; equitable distribution of the marital estate; alimony; and attorney's fees, expert-witness fees, and lawsuit expenses.  Following a sixteen-day trial, the chancellor granted the parties an irreconcilable-differences divorce.  The chancellor also granted the parties joint legal custody of the children, awarded Powell physical custody of the children, and awarded Wendi visitation. The chancellor ordered Wendi to pay monthly child support to Powell but also awarded Wendi lump-sum alimony.

¶3.     With regard to the parties' summer visitation schedule, the divorce order decreed that they were to alternate weeks with the children.  In discussing the issue of child support, the divorce order specifically stated, "Powell and Wendi shall equally divide the cost of the children's extracurricular activities, *including summer camp(s)*." (Emphasis added).

¶4.     After conflicts arose regarding summer visitation and the children's extracurricular activities, the parties both signed and submitted to the chancellor an agreed order,[1] which the chancery court entered on February 6, 2020.  Relevant to the present appeal, the agreed order

---

[1] We distinguish this "agreed order" from the "divorce order" referenced in this opinion.

provided the following:

> That Powell shall have the tie-breaker vote in decisions made regarding the children's extracurricular activities when Wendi does not agree that it is in the children's best interest to participate in such activity. That parties shall continue to consult, inform, and confer with one another regarding any and all of the children's extracurricular activities, regardless of whether or not the parties have agreed to the children's participation.

> That Wendi shall bring the children to their extracurricular activities unless participation in the activity is not reasonable due to illness or being out of town on vacation.

In their agreed order, the parties specifically excluded "church" as an extracurricular activity but did not designate any further exceptions.

¶5. The agreed order also provided that the summer visitation schedule set forth in the divorce order would remain unchanged except with regard to the summers of 2020 and 2021. As to those two summers, the agreed order stated the following:

> For the month of July 2020, Powell shall have visitation with the minor children the second week in July. Wendi shall have visitation with the minor children from 5:00 p.m. on June 28th through 5:00 p.m. on July 5th and from 5:00 p.m. on July 12th through 5:00 p.m. on August 15th.

> For the month of July 2021, Wendi shall have visitation with the minor children from 5:00 p.m. on July 15th through 5:00 p.m. on August 15th with the exception that Powell shall have visitation with the minor children the second weekend from 5:00 p.m. on Thursday through 5:00 p.m. on Monday.

¶6. On March 4, 2022, Powell filed a petition and requested that the chancellor allow the parties' children to attend summer camp and hold Wendi in contempt of the agreed order. In his petition, Powell asserted that he had sent Wendi an email entitled "Summer Extracurricular Activities" on February 9, 2022, in which he had broached the topic of

3

"extracurricular opportunities for camp during the summer break." According to Powell, the proposed summer camps for each child would affect both parents' summer parenting time. Specifically, the proposed summer camps for the parties' son "would impact approximately fourteen (14) days of [Powell's] summer parenting time and approximately fourteen (14) days of [Wendi's] summer parenting time." The proposed summer camps for the parties' daughter "would impact approximately seven (7) days of [Powell's] parenting time and approximately five (5) days of [Wendi's] summer parenting time."

¶7. Powell asserted in his petition that Wendi's "refusal to allow the children to attend summer camp, which will equally impact both parties' parenting time, is contrary to the children's best interests and the Agreed Order[] entered with the Court on February 6, 2020." He therefore asked the chancellor to allow the children to participate in the proposed camps for the summer of 2022 and to find Wendi in willful contempt of the agreed order's provision that granted him tie-breaking authority with regard to the children's extracurricular activities.

¶8. Wendi responded to Powell's petition and filed her own counter-claim for contempt and for a modification of summer visitation. Wendi disputed Powell's contention that summer camps qualified as extracurricular activities. She also argued it was in the children's best interests to have a month of uninterrupted time with her during the summer. To that end, Wendi requested that the chancellor specifically require the parties to continue the schedule set forth in the agreed order for the summer of 2021 rather than to revert to the summer schedule established by the divorce order. In addition, Wendi asked the chancellor to find

that Powell was in willful contempt of the joint-legal-custody provision of the divorce order.

¶9.     Following a hearing on the parties' filings, the chancellor entered an order in the matter on June 14, 2022. The chancellor concluded that summer camps qualified as extracurricular activities and that under the prior agreed order, Powell had the "tie-breaker vote in decisions made regarding the children's extracurricular activities, including summer camps, when [Wendi] does not agree that it is in the children's best interest to participate in such activity." The chancellor held, however, that when Powell "exercises his tie-breaker vote for the minor children to participate in the summer camp and said summer camp impacts [Wendi's] summer parenting time," July 4th holiday, or time on the daughter's birthday, Wendi was "entitled to make up the days of parenting time that she missed while the child attended the summer camp in question." The chancellor also held that the parties were to return to summer visitation in accordance with the weekly alternating schedule set forth in the divorce order and that all issues "pertaining to custody, visitation, holidays, summers, and parental rights shall remain in full force and effect pursuant to the Final Decree of Divorce and all subsequent orders." Aggrieved by the chancellor's decision, Wendi appeals.

## STANDARD OF REVIEW

¶10.    "This Court 'will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.'" *Williams v. Williams*, 359 So. 3d 217, 220 (¶11) (Miss. Ct. App. 2023) (quoting *Stuckey v. Waid*, 195 So. 3d 872, 875 (¶13) (Miss.

5

Ct. App. 2016)). We review questions of law de novo. *Id.*

## DISCUSSION

¶11. Wendi argues that the chancellor erroneously classified summer camps as extracurricular activities and that the error has the potential "to allow Powell to unilaterally schedule summer camp during her summer visitation time" without providing sufficient time to make up the missed days. Wendi further contends that it "would be in the best interests of the minor children for [her] to receive the month of July each and every year for her summer visitation." She therefore asserts that the chancellor also erred by finding the parties were to resume the divorce order's weekly alternating summer schedule rather than to continue the month-long schedule that the agreed order specified for the summer of 2021.

¶12. In the divorce order, the chancellor stated more than once that "Powell and Wendi shall equally divide the cost of the children's extracurricular activities, *including summer camp(s)*." (Emphasis added). In their subsequent agreed order, the parties further discussed how they wished to handle their summer visitation schedule and the children's extracurricular activities. They specifically excluded "church" as an extracurricular activity. Although the parties could have made a similar decision with regard to summer camps, they failed to do so. Our caselaw recognizes "that an agreed order or consent judgment 'acquires the incidents of and will be given the same force and effect as . . . judgments rendered after litigation. It is binding and conclusive, operating as res judicata and an estoppel to the same extent as judgments after contest.'" *In re Est. of Smith v. Boolos*, 204 So. 3d 291, 309 (¶37) (Miss.

6

2016) (quoting *Smith v. Malouf*, 826 So. 2d 1256, 1259 (¶10) (Miss. 2002)). We therefore conclude that no abuse of discretion or manifest error arose from the chancellor's determination in her June 14, 2022 order that summer camp qualifies as an extracurricular activity that falls under Powell's tie-breaking authority.

¶13. Likewise, we find no abuse of discretion or manifest error arising from the chancellor's holding that the parties were to resume the alternating weekly summer schedule set forth by the divorce order rather than to continue the agreed order's month-long schedule. As discussed, Wendi contends that the chancellor's order could allow Powell to usurp her summer visitation without sufficient time to make up the missed days. Wendi does not, however, assert that such a usurpation has actually occurred—only that the potential for such an issue exists.

¶14. Relevant to this portion of Wendi's claim, the chancellor's June 14, 2022 order provided that if Powell's use of his tie-breaking vote impacts Wendi's summer visitation, Wendi "shall be entitled to make up the days of parenting time that she missed while the child attended the summer camp in question." The order further directed the parties to "work together to coordinate a schedule to ensure [Wendi] shall be entitled to make up her missed summer parenting time during the summer." Moreover, as with the matter of summer camp, the parties specifically referenced summer visitation in their agreed order. Although they could have included different language in their agreed order, they specifically stated that the divorce order's summer visitation schedule would remain in effect except with respect to the

summers of 2020 and 2021. Thus, based upon the language contained in the parties' own agreed order and our review of the record as a whole, we find no abuse of discretion or manifest error in the chancellor's decision.

## CONCLUSION

¶15. Because we find no abuse of discretion or manifest error, we affirm the chancellor's order.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**