# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01276-COA

**KIM MARIE GWATHNEY**                                          **APPELLANT**

**v.**

**GARY JOE GWATHNEY**                                            **APPELLEE**

DATE OF JUDGMENT:               07/23/2015
TRIAL JUDGE:                    HON. H.J. DAVIDSON JR.
COURT FROM WHICH APPEALED:      CLAY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         TIMOTHY C. HUDSON
ATTORNEY FOR APPELLEE:          MARK ANDREW CLIETT
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        DENIED DIVORCE BASED ON HABITUAL
                                CRUEL AND INHUMAN TREATMENT
DISPOSITION:                    AFFIRMED - 01/10/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND ISHEE, JJ.

### ISHEE, J., FOR THE COURT:

¶1.     Kim Marie Gwathney claims she was entitled to a divorce from Gary Joe Gwathney based on cruel and inhuman treatment. But the Clay County Chancery Court found that she did not present sufficient evidence. Kim appeals. Because the chancellor did not abuse his discretion, apply an erroneous legal standard, or render a decision that was manifestly wrong, we affirm his judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     Kim and Gary were married in February 2007. They were forty-five and fifty-eight years old, respectively. In June 2012, Kim filed for divorce based on allegations of habitual

drunkenness and habitual cruel and inhuman treatment. Gary contested Kim's claims.

¶3. At trial, Kim testified that Gary started physically abusing her shortly after their marriage. She said he assaulted her "at least fifteen times," but the results were typically concealed by her clothes. According to Kim, Gary often locked her out of their house, forcing her to sleep in her car or on a picnic table. She estimated that Gary physically abused her between five and ten times during the year before she left their home in June 2012. Aside from generalizations, she presented more specific evidence of two incidents: one in December 2008, and another during the summer of 2011. The two incidents will be addressed in greater detail below.

¶4. In July 2015, the chancellor entered his final judgment. After discussing the evidence and his reasoning in great detail, the chancellor held that Kim presented insufficient evidence that she was entitled to a divorce. Kim appeals.

## STANDARD OF REVIEW

¶5. "In domestic-relation cases, our review is limited to whether the chancery court's findings were manifestly wrong or clearly erroneous, or the court applied the wrong legal standard." *Lomax v. Lomax*, 172 So. 3d 1258, 1260 (¶5) (Miss. Ct. App. 2015). If substantial evidence in the record supports the chancellor's findings of fact, we will not disturb his decision. *Id*.

## ANALYSIS

¶6. Kim argues that the chancellor erred when he denied her request for a divorce based on cruel and inhuman treatment. Kim bore the burden of proving, by a preponderance of the

2

evidence:

> Conduct that (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the offended party, or (2) is so unnatural and infamous as to make the marriage revolting to the offended spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.

*Bodne v. King*, 835 So. 2d 52, 58 (¶¶19-20) (Miss. 2003). The conduct must be "more than mere unkindness, lack of affection, or incompatibility." *Lomax*, 172 So. 3d at 1260 (¶6). And it generally "must be routine and continuous." *Id*. Still, "one incident of personal violence may be of such a violent nature as to endanger the life of the complainant spouse and be of sufficient gravity to establish the charge of habitual cruel and inhuman treatment." *Ellzey v. Ellzey*, 253 So. 2d 249, 250 (Miss. 1971). "[T]here is a dual focus on the conduct of the offending spouse and [its] impact . . . on the offended spouse." *Harmon v. Harmon*, 141 So. 3d 37, 42 (¶16) (Miss. Ct. App. 2014). "This specific inquiry is subjective." *Id*. "Instead of using an ordinary, reasonable-person standard, we concentrate on the conduct's effect on the particular offended spouse." *Id*. "Though a party alleging cruelty must generally corroborate his or her testimony, an exception is made where corroboration is not reasonably possible because of the nature of the accusation." *Id*. The Mississippi Supreme Court has held that the standard of proof is high, but certainly not impossible to satisfy. *Holladay v. Holladay*, 776 So. 2d 662, 677 (¶65) (Miss. 2000).

¶7.    The chancellor's judgment stated, "it is of concern to this Court that there are allegations of physical abuse over the course of the marriage of the parties, but no persuasive corroborating evidence to support said allegations." The chancellor further noted that "Kim

3

has stated that those episodes have been consistent over the years and frequent[;] [h]owever, she only testified to two instances, the first occurring in 2008 and the last in 2011." The chancellor discussed the evidence in depth and continuously noted that Kim never produced any witness testimony from law enforcement, medical staff, or eyewitnesses. The only evidence she presented consisted of a neighbor verifying that Kim fled the house on the night of the alleged abuse in 2008, and a few pictures a friend took the day after the alleged abuse in 2011. The chancellor noted that some of the evidence presented suggested Kim pre-planned her actions after the 2008 incident, when she only went to the hospital for a blood-alcohol-content test to refute allegations that she was drunk during the abuse. Ultimately the chancellor found that there was not sufficient evidence presented to corroborate Kim's allegations of abuse. The chancellor concluded:

> The Court finds that the standards set by our law for the grant of a divorce on the grounds alleged have not been met. Numerous cases in this state summarize the standard needed to be proven by Kim to entitle her to divorce on this ground. In all the five years of marriage, there was no corroborating proof that Kim spent the night elsewhere other than the periods of separation. She only sought medical care once and that was to disprove her use of alcohol[,] and took no legal action the day after her alleged abuse in 2011. No law[-]enforcement personnel, no police reports, nor any filings of criminal or civil charges took place until the filing of the divorce itself . . . .
>
> This Court is of the opinion that [Gary's alleged] conduct . . . does not rise to the level or endangerment of life, limb or health[;] nor is there a reasonable apprehension of such danger. Further[,] there is no persuasive proof that the alleged conduct was so unnatural and infamous as to make the marriage revolting and render it impossible for Kim to discharge the duties of marriage . . . .

¶8.     Citing *Fulton v. Fulton*, 918 So. 2d 877 (Miss. Ct. App. 2006), Kim claims the chancellor erred when he found there was insufficient evidence to award her a divorce based

4

on habitual cruel and inhuman treatment.  In *Fulton*, this Court held:

> Athough [the wife] testified only to three specific instances of physical abuse on the part of [her husband], and only one instance occurred during the course of the parties' marriage, her own testimony and her corroborating witnesses' testimony demonstrated a pattern of abuse that enabled the chancellor to grant a divorce on the grounds of habitual cruel and inhuman treatment.

*Id*. at 881 (¶10).  Although this Court held in *Fulton* that a chancellor had not abused his discretion when he awarded a divorce for habitual cruel and inhuman treatment under the circumstances of that case, it should not be interpreted as though a chancellor is *required* to grant a divorce under circumstances that are loosely related, at best.  Three witnesses corroborated the wife's testimony in *Fulton*. *Id*. at 880-81 (¶9).  Here, it was within the chancellor's discretion to find that there was inadequate corroborating evidence that Kim suffered cruel and inhuman treatment.  The chancellor thoroughly articulated his reasoning, and he expressly noted that Kim did not call her sister as a witness to corroborate her claim that she had spent several nights with her after alleged altercations with Gary.  And although there was evidence that Kim's coworker, Lisa Read, took pictures of bruises the day after Gary allegedly physically abused Kim during an argument, the chancellor was not inherently obligated to find that single incident constituted sufficient proof of cruel and inhuman treatment.

¶9.     "[A]s the trier of fact, [the chancellor] evaluates the sufficiency of the evidence based on the credibility of the witnesses and the weight of their testimony." *Holladay*, 776 So. 2d at 676 (¶62).  We do not find that the chancellor was manifestly wrong or that he applied an erroneous legal standard.  This opinion should not be construed as though a chancellor could

5

*never* find cruel and inhuman treatment under the same or similar circumstances. Instead, we simply hold that it was within the chancellor's discretion to consider the particular nuances of this case, weigh the evidence, and determine that the proof fell short of habitual cruel and inhuman treatment. To hold otherwise, we would have to improperly substitute our view for the chancellor's. Because that would be beyond the scope of the standard of review,[1] we affirm the chancellor's judgment.

¶10. **THE JUDGMENT OF THE CLAY COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**

---

[1] In *Kumar v. Kumar*, 976 So. 2d 957, 960 (¶13) (Miss. Ct. App. 2008), this Court stated that "[t]he chancellor's determination of whether a spouse's conduct rose to the level of cruel and inhuman treatment is a determination of law" that we review de novo. In so doing, we relied on *Potts v. Potts*, 700 So. 2d 321, 322 (¶10) (Miss. 1997), and *Reed v. Reed*, 839 So. 2d 565, 569 (¶13) (Miss. Ct. App. 2003). In *Potts*, the Mississippi Supreme Court cited *Bland v. Bland*, 629 So. 2d 582, 586 (Miss. 1993), and held that a chancellor's findings regarding whether a spouse's "conduct rose to the level of habitual cruel and inhuman treatment . . . *is a determination of law*, and is reversible where the chancellor has employed an erroneous legal standard." *Potts*, 700 So. 2d at 322 (¶10) (emphasis added). However, nothing in *Bland* appears to support the concept that a chancellor's factual determination is a question of law. Instead, the Supreme Court stated that "[e]specially in the divorce arena, the chancellor's findings will not be reversed unless manifestly wrong." *Bland*, 629 So. 2d at 587. And no portion of *Bland* addressed a chancellor's conclusion regarding whether conduct qualified as cruel and inhuman treatment. Fully cognizant of our place in the hierarchy of Mississippi courts, we do not comment on the subject out of any form of criticism, but to note our awareness of the precedent, and to explain our reliance on the more unequivocal command that an appellate court is "required to respect the findings of fact made by a chancellor" where they are "supported by credible evidence and not manifestly wrong [–] . . . particularly . . . in areas of divorce." *See Mizell v. Mizell*, 708 So. 2d 55, 59 (¶13) (Miss. 1998) (quoting *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990)).