# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01148-COA

**ROBERT B. WALLACE**                                             **APPELLANT**

**v.**

**LEIGH ANN WALLACE**                                         **APPELLEE**

DATE OF JUDGMENT:           09/23/2020
TRIAL JUDGE:           HON. TROY FARRELL ODOM
COURT FROM WHICH APPEALED:    RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      KENNETH TREY O'CAIN
ATTORNEY FOR APPELLEE:       JON HEATH POWELL
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
DISPOSITION:           AFFIRMED - 04/05/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1. Robert Brock Wallace (Brock) and Leigh Ann Massey Wallace (Leigh Ann) were granted a judgment of divorce on September 2, 2011, in the Rankin County Chancery Court. The judgment of divorce was granted on the ground of irreconcilable differences and incorporated a marital dissolution agreement (MDA), which provided for both the division of property and the care, custody, and support of their children. During their marriage, Brock and Leigh Ann had two children, A.R., a son, and V.A., a daughter, who were seven and three years old, respectively, at the time of the divorce.[1]

---

[1] Initials have been used in parts of this opinion to protect the identities of the minor children.

¶2.     The MDA provided for Leigh Ann to have primary physical custody of the children with Brock having visitation every other week from Thursday at 6 p.m. to 7 a.m. the following Monday, along with a visitation schedule for holidays, birthdays, and other special occasions. However, sometime in 2017, Brock and Leigh Ann agreed to an arrangement of visitation where the children would spend one week with Leigh Ann and the next week with Brock. A review of the record reveals that this arrangement was working well for everyone until Leigh Ann filed this action in 2019.

¶3.     The MDA also provided for child support as follows:

> Husband shall pay unto Wife, as and for the support and maintenance of the minor children of the parties, 20% of his adjusted gross income not to exceed 20% of $60,000 per year adjusted gross income or $300 per month, whichever sum is greater, to be adjusted every year on May 1, to reflect the previous years adjusted gross income. For the purpose of monitoring the income of the Husband, Husband agrees to furnish Wife with complete copies of his federal and state tax returns, including, but not limited to, K-1 forms, W-2 forms, 1099 forms and any and all other documents showing income included with the filing of the respective tax returns, each year on or before May 1.[2]

Under the MDA, Leigh Ann was responsible for providing medical insurance for the children. Each parent was responsible for one-half of all other expenses, including out-of-pocket medical costs, daycare, school, extracurricular activities, and their college education fund through MPACT.[3] Leigh Ann was given the right to claim the children as her

---

[2] The child support provisions also clearly state that "the parties affirmatively acknowledge that no action by the parties will be effective to reduce the amount of child support after the due date of each payment, and that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of this agreement."

[3] This is an acronym for the Mississippi Prepaid Affordable College Tuition Plan. In the event one party paid exclusively for daycare, school, or extra-curricular activities, the

dependents for tax purposes.

¶4.    On January 31, 2019, Leigh Ann filed a petition for modification, citation of contempt, and other relief. The petition asked for sole legal custody of the children, an increase in child support, and a judgment of contempt against Brock for his failure to pay child support and his portion of the children's expenses according to his obligations under the MDA. On February 7, 2019, Leigh Ann served Brock with discovery requests, and the responses were due on March 9, 2019. When Brock failed to timely answer or respond, Leigh Ann filed a motion to compel responses to that discovery on April 24, 2019. On April 25, 2019, Brock filed his answer to Leigh Ann's petition for modification in the form of a general denial and filed a counter-claim for a citation of contempt, modification, and declaratory relief. Brock's counter-claim for contempt alleged that Leigh Ann was not complying with the MDA by failing to provide him receipts for the children's expenses, by breaching the morals clause, and by withholding visitation. Brock also asked for joint physical and legal custody, for the elimination of child support, and for modification of the judgment of divorce to require the children's MPACT accounts be set up in his name as well as Leigh Ann's.[4]

¶5.    Brock filed his notice of service of discovery on Leigh Ann on April 26, 2019, and his notice of service of his answers to Leigh Ann's discovery on April 29, 2019, objecting to many of Leigh Ann's requests. Leigh Ann's motion to compel was heard on May 23, 2019,

---

paying party was to forward that expense in writing to the other to be reimbursed for their half within thirty days.

[4] The MPACT accounts were in Leigh Ann's name only.

and granted by an order dated May 24, 2019.

¶6.    On August 12, 2019, Brock filed a motion to compel responses to his second set of discovery requests and a motion for temporary relief, asking the court for a temporary order holding that the "parties would share legal and physical custody of the children and that any child support obligations be suspended" since a final hearing was not scheduled until December 2019.  Those two motions were set for hearing on September 10, 2019. On September 9, 2019, the parties entered into an agreed order for temporary relief suspending Brock's child support obligations pending further order of the court, with the court reserving the right to later determine whether child support would "otherwise be due and payable for the months addressed" by the order.[5]

¶7.    However, the parties continued to argue over the production of Brock's tax returns. An order dated December 16, 2019, compelled their production.[6] An agreed order was entered the same date, upon an ore tenus motion by the parties, for a continuance from the December 16, 2019 hearing date "due to the failure by [Brock] to produce his tax returns."

¶8.    The hearing on these matters was held on June 16-18, 2020, and August 31, 2020. The court heard from witnesses for both parties. Leigh Ann called Brock adversely and testified

---

[5] Brock had subsequently filed a second set of discovery requests which Leigh Ann answered prior to the hearing date, so that was no longer an issue. The order did not address Brock's request for joint legal and physical custody, but the record reflects that the every-other-week visitation schedule established in 2017 continued throughout this litigation.

[6] Brock had since remarried and argued that he should not have to produce jointly filed tax returns unless they were redacted to exclude any information regarding his wife, Jamie Wallace. The order compelled production of the returns, even if they were joint returns.

4

herself. Brock testified on his own behalf and also called Michael Phillips, Katie Torrence, Jamie Wallace, and both children. The parties' attorneys testified on behalf of their clients as to the issue of attorney's fees. The chancellor rendered his judgment on September 16, 2020, as to both Leigh Ann's petition and Brock's counterclaim. An agreed order supplementing, amending, and clarifying the judgment was filed on September 23, 2020. Brock has appealed, raising eight issues for Court review.

## STANDARD OF REVIEW

¶9. "In domestic-relation cases, our review is limited to whether the chancery court's findings were manifestly wrong or clearly erroneous, or the court applied the wrong legal standard." *Gwathney v. Gwathney*, 208 So. 3d 1087, 1088 (¶5) (Miss. Ct. App. 2017). If there is substantial evidence in the record to support the chancellor's findings of fact, we will not disturb his decision. *Id.*

## ANALYSIS

I.   **Whether the chancellor erred by finding Brock in arrears for child support for the months of July 2017 through April 2019.**

¶10. Brock admitted that he had failed to pay Leigh Ann child support since June 2017. The chancellor found that Brock owed back child support for the months of July 2017 through April 2019 (the date when he petitioned the court for relief) and completely suspended his child support obligation from and after the date of judgment.

¶11. Brock argues that the chancellor erred in finding that he continued to be obligated to

5

pay child support after he and Leigh Ann had voluntarily modified the custody arrangement.[7]

The chancellor awarded Brock credit for the time after April 2019 when he first sought relief.

Quoting the chancellor, Brock argues that because the "financial burden for the support of

the children was *evenly yoked* between Brock and Leigh Ann" for the years 2017 through

May 2020, he should not be responsible for child support during that period.

> Courts award child support to the custodial parent for the benefit and protection of the child. . . . Such benefits belong to the child, and the custodial parent has a fiduciary duty to hold them for the use of the child. Court-ordered child-support payments vest in the child as they accrue and they may not thereafter be modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made. The noncustodial parent may be entitled to credit for any additional support which he/she has evinced by satisfactory proof to the trial court.

*Roberts v. Roberts*, 110 So. 3d 820, 825 (¶13) (Miss. Ct. App. 2013) (quoting *Smith v. Smith*,

20 So. 3d 670, 674 (¶13) (Miss. 2009)).

¶12.    Brock relies on *Bryant v. Bryant*, 924 So. 2d 627 (Miss. Ct. App. 2006), which also

involved a fifty-fifty custody agreement, where the chancery court awarded credit to the non-

custodial parent for the time the child was in his custody. *Bryant*, however, is distinguishable

because both parties had agreed to that arrangement. *Id*. at 630 (¶6). In *Bryant*, because we

found "a valid extra-judicial agreement between the parties," we concluded "that the

chancellor did not err in upholding that agreement." *Id*. at 631 (¶10). Here, there was no such

---

[7] In the summer of 2017, several months after they had begun the every-other-week visitation, Brock approached Leigh Ann about reducing the every-other-week custody arrangement to writing. He presented Leigh Ann with a document modifying the MDA which he had an attorney prepare. Leigh Ann testified that she did not sign the document because she "was not going to make any modifications to anything on the papers that [they] already had until the child support was taken care of."

agreement. There is no proof in the record that Leigh Ann ever agreed to suspend Brock's obligation to pay child support. In fact, it is quite the opposite given her refusal to reduce any modification of the original MDA to writing.

¶13.    Regarding modification, the MDA provides:

> A modification or waiver of any or all of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement, and approved by the Court if such approval is required, or as otherwise Ordered by the Court. Failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

With regard to child support, specifically, the parties acknowledge in the MDA "that no action by the parties will be effective to reduce the amount of child support[,]. . . and court approval must be obtained before child support can be reduced." Clearly, under the terms of the MDA, Brock was not entitled to unilaterally suspend his child support obligations without a court order.

¶14.    The parties placed the entire issue of child support before the chancellor in both the petition and the counterclaim. After hearing the evidence presented and considering the applicable law, the chancellor terminated future child support, held Brock liable (but not in contempt) for past-due child support, but gave Brock credit from the date he filed his counterclaim seeking relief. Under the applicable standard of review set forth above, we do not find that the chancellor's decision was manifestly wrong or clearly erroneous.

**II.    Whether the chancellor erred by finding Brock in arrears for nonpayment of daycare and after-school expenses.**

¶15.    The MDA provides the following with regard to childcare expenses:

7

> The parties shall be equally responsible [for] reasonable daycare, school and extracurricular expenses related to the children. Any expenses paid for by the other party in full, shall be forwarded in writing to the other party and shall be paid or reimbursed (where appropriate) within thirty (30) days. Where possible, both parties shall be given advance notice of expenses to be incurred.

It is undisputed that Brock failed to pay his half of daycare costs. Both before and after the divorce, the children were enrolled at Mandy's daycare. Brock testified that he had never seen receipts for Mandy's daycare. Leigh Ann testified that she had provided Brock with receipts for daycare and MPACT in October 2015 but had not provided any receipts after that. Brock argues that Leigh Ann's failure to provide him with receipts was a violation of the MDA, while Leigh Ann points out that there is no time limit in the provision regarding receipts. The chancellor found the MDA to be "ambiguous as to whether Leigh Ann had an obligation to forward Brock the receipts within thirty days of incurring the expense, or whether Brock only had thirty days in which to pay the expense once written evidence was submitted to him." The chancellor found it unreasonable for Leigh Ann to "stockpile the receipts for years and spring them on Brock all at once," but also found it unreasonable "for Brock to avoid paying this obligation knowing that it was being incurred, all the while enjoying the fruits of Mandy's services and Leigh Ann's payments."[8]

¶16.   The chancellor relied on *Durr v. Durr*, 912 So. 2d 1033 (Miss. Ct. App. 2005), in reaching his conclusion that Brock was responsible for his half of the daycare expenses, even if he was not presented with receipts until eight years later. In *Durr*, we considered a similar

---

[8] As a result, the chancellor concluded that Leigh Ann's unclean hands, coupled with the ambiguity of the MDA, prevented him from finding Brock in contempt for nonpayment of the childcare expenses as Leigh Ann had requested.

situation where a parent who was required by the judgment of divorce to pay private school tuition failed to do so and argued that his former spouse's inaction "justifiably led him to believe that he did not have to pay it notwithstanding the clear requirements of the judgment of divorce." *Id*. at 1038 (¶15). We found Durr's obligation to make the payments required under the judgment of divorce was not "excused by [the opposing party's] tardiness in seeking enforcement of his obligation to pay." *Id*. at (¶11). The chancellor found the same to be true in the present case. We find no error in this regard.

III. **Whether the chancellor erred by failing to hold Leigh Ann in contempt for withholding visitation.**

¶17. "Chancellors have substantial discretion regarding contempt matters." *Stephens v. Stephens*, 328 So. 3d 760, 769 (¶20) (Miss. Ct. App. 2021). "An adjudication of contempt must be proved by clear and convincing evidence." *Id*. In the original child-custody agreement in the MDA, Brock was to have visitation with the children every other week from 6 p.m. on Thursday to 7 a.m. on Monday. Brock argues in his brief the trial testimony "revealed that Leigh Ann consistently and systematically denied Brock visitation from 2011 to 2015" since he often did not get the children until Friday after school.[9] Leigh Ann testified that she had never denied him visitation with the children. The record reveals that the chancellor concluded that there was no "proof that Leigh Ann willfully and contumaciously withheld the children from Brock on Thursday evenings." We find no clear error. The only testimony from Brock was that prior to the current arrangement, he got the children on

___

[9] Brock's counterclaim only alleges a violation of the visitation provision of the MDA from 2011 to 2014.

Fridays, instead of Thursdays as the MDA provided, because Leigh Ann told Brock she thought it would be better if they stayed with her on Thursday since it was a school night. Brock further testified that he exercised his visitation routinely from 2011 to 2017. In fact, Brock admitted during trial that Leigh Ann was not withholding visitation and was instead giving him extra visitation. We will not disturb the chancellor's findings of fact here.

**IV.** **Whether the chancellor erred in failing to award both parties the right to claim the children as dependents for tax purposes.**

¶18. The chancellor included no specific findings in his judgment regarding tax exemptions; the ruling provides only that "[t]he Court does not modify the provision of the Marital Dissolution Agreement concerning child dependency exemptions for federal and state income taxes." "When a chancellor makes a ruling without specific findings of fact, this [c]ourt assumes that the chancellor resolved any factual disputes in favor of the appellee." *Vandenbrook v. Vandenbrook*, 292 So. 3d 991, 999 (¶30) (Miss. Ct. App. 2019) (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 777-78 (Miss. 1997)). In the initial MDA, Brock agreed to Leigh Ann's claiming the children as dependents for tax purposes, so there was no initial analysis by the chancellor. In *Thomas v. Thomas*, 281 So. 3d 1191, 1213 (¶¶78-79) (Miss. Ct. App. 2019), we said the following:

> [T]here is no requirement that the chancellor make specific findings to support an award of tax exemptions. Indeed, the Court stated that "many cases do not involve incomes or estates significant enough to justify this type of analysis." *Id*.; *accord Laird v. Blackburn*, 788 So. 2d 844, 852-53 (¶¶16-17) (Miss. Ct. App. 2001). In this case, the chancellor did not make any findings of fact related to the dependency tax exemptions, but "when there are no specific findings of fact, this Court will assume that the trial court made determinations of fact sufficient to support its judgment." *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 367 (Miss. 1992).

¶19.    We assume the chancellor did the same here, and accordingly, we will not disturb his decision.

**V.      Whether the chancellor erred in failing to hold Leigh Ann in contempt for her failure to produce receipts.**

¶20.    The chancellor noted confusion about Brock's contempt request for Leigh Ann's alleged failure to provide receipts because Leigh Ann had provided those through discovery. The chancellor went on to explain, "If his request is instead to hold her in contempt for not *timely* providing receipts, the Court cannot find in the [MDA] where a deadline was included as to the timeliness of receipts." We find no clear error with the chancellor's rationale that the MDA is ambiguous as to exactly when Leigh Ann was required to provide receipts. Brock did not meet his burden here. *Stephens*, 328 So. 3d at 769 (¶20) ("An adjudication of contempt must be proved by clear and convincing evidence.").

**VI.     Whether the chancellor erred in awarding Leigh Ann attorney's fees.**

¶21.    In *McKee v. McKee*, 418 So. 2d 764, 766 (Miss. 1982), our supreme court set forth the factors to be considered when determining an award of attorney's fees:

> The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

The chancellor considered the *McKee* factors in his decision to grant Leigh Ann $10,000 in attorney's fees. Testimony at trial established that Leigh Ann's attorney had billed her $25,647, not including the cost of three and one-half days of trial.

¶22.    Brock admitted to failing to pay child support, MPACT, and after-school expenses. The chancellor found Brock in contempt for failure to pay MPACT.[10] "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Bozant v. Nguyen*, 296 So. 3d 254, 264 (¶19) (Miss. Ct. App. 2020). "One of the purposes for awarding attorney fees is to compensate the prevailing party for losses sustained by reason of the defendant's noncompliance." *Durr*, 912 So. 2d at 1040 (¶25). We find no abuse of discretion in the chancellor's award of attorney's fees to Leigh Ann. *See McKee*, 418 So. 2d at 767 (applying an abuse-of-discretion standard of review).

### VII.    Whether the chancellor erred by failing to award Brock more than $1,000 in attorney's fees.

¶23.    The chancellor found Leigh Ann in contempt of the morals clause in the MDA and for that, Brock was awarded $1,000 in attorney's fees for his successful prosecution of that claim. Since the "matter of awarding attorney's fees is largely entrusted to the sound discretion of the chancellor," "we are reluctant to disturb a chancellor's discretionary determination whether to award attorney's fees or the amount of any award." *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011). We will not disturb the chancellor's decision.

### VIII.    Whether the chancellor erred by ordering Brock to provide for the children's health insurance.

¶24.    Under the MDA, Leigh Ann was charged with providing the children with health

---

[10] The chancellor did not find Brock in contempt for his failure to pay the daycare expenses because he found the provision for providing receipts ambiguous.

insurance. Testimony at trial showed that Leigh Ann insured the children through her employer, the University of Mississippi Medical Center, where she was the student-union manager. She further testified that her position was to be eliminated on August 19, 2020, as a result of COVID-19. Both Brock and Jamie testified they had offered to cover the children on Jamie's work policy, but Leigh Ann turned them down. The chancellor modified the MDA to "allow Leigh Ann to elect to have Brock charged with the responsibility of providing the children with an adequate plan" of health insurance.

¶25.    Brock argues that the chancellor's ruling violates his right to due process because neither party put the specific issue of health insurance before the chancellor. We disagree. Leigh Ann sought an increase in child support, while Brock sought to eliminate it altogether, an issue on which he was successful. Mississippi Code Annotated section 93-5-23 (Rev. 2018) governs modification of the MDA and provides in part:

> When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage . . . .

Further, Mississippi Code Annotated section 43-19-101(6) (Rev. 2015) provides that "[a]ll orders involving support of minor children, as a matter of law, shall include reasonable medical support, . . . [and] [t]he court shall then make appropriate provisions in the judgment for the provision of health insurance coverage for the child(ren) in the manner that is in the best interests of the child(ren)." We have held that the "requirements of section 43-19-101(6) are  mandatory and apply in all cases involving child support." *Savell v. Manning*, 325 So. 3d 1208, 1224 (¶57) (Miss. Ct. App. 2021). Health insurance coverage is under the umbrella

13

of support and was properly addressed by the chancellor.

> All need be reminded that in cases such as this the best interests of the children are as always our touchstone. *See Tammen v. Tammen*, . . . 182 N.W.2d 840, 841-842 (Minn. 1970). In child support modification proceedings, as elsewhere, the chancellor is accorded substantial discretion and is charged to consider all relevant facts and equities, to the end that a decree serving the best interests of the children may be fashioned.

*Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983). We find the chancellor did that here.

## CONCLUSION

¶26.    After carefully reviewing the record, we find no abuse of discretion or manifest error in the chancellor's judgment, and substantial evidence supported his ruling.

¶27.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. WESTBROOKS AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**