# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00041-COA

**SHELBIE SUBER NETTLES**                                                          **APPELLANT**

**v.**

**MICHAEL LANDON NETTLES**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2022 |
| TRIAL JUDGE: | HON. JOSEPH PRESTON DURR |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | S. CHRISTOPHER FARRIS |
| ATTORNEY FOR APPELLEE: | KELLEY MITCHELL BERRY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 03/12/2024 |
| MOTION FOR REHEARING FILED: | |

### BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Shelbie Nettles appeals from the judgment of the Lincoln County Chancery Court dismissing her complaint for divorce on the ground of habitual cruel and inhuman treatment against Landon Nettles.  After review, we affirm the chancellor's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.     Landon and Shelbie were married in July 2018 when they were 23 years old and 24 years old, respectively.  In December 2020, their child Henry was born.[1]  In August 2021, Landon and Shelbie separated, and Shelbie filed a complaint for divorce in the Lincoln County Chancery Court in September 2021 on the ground of habitual cruel and inhuman

---

[1] We use a pseudonym to protect the minor child's identity.

treatment or, in the alternative, irreconcilable differences, and she requested custody of Henry. In response, Landon filed a counter-claim for child custody.

¶3. During a bifurcated trial, the following witnesses testified as to the issue of divorce: Shelbie, her mother (Jennifer Suber), her father (Robert Suber), Landon, and his sister (Katie Dyess). During the course of the trial, Shelbie described several incidents that took place between her and Landon—primarily in the months following Henry's birth—that had a negative impact on her, and she suggested that the following incidents, when considered together, constituted habitual cruel and inhuman treatment.

### *Disagreements about Parenting*

¶4. Disagreements between Landon and Shelbie about parenting were discussed throughout the trial. Shelbie testified that Landon took issue with her sterilizing Henry's bottles, picking up Henry when he cried, and sleeping next to Henry on the couch. According to Shelbie, Landon would tell her, "That's ignorant" or "That's stupid," when he disagreed with her. Landon seemingly acknowledged that he and Shelbie had differences of opinion, but he testified that Shelbie's preferences or Shelbie's parents' preferences typically prevailed over his. Landon suggested that Shelbie's parents began overstepping boundaries after Henry's birth and that they interfered with his and Shelbie's marriage. Landon admitted to telling Shelbie, "That's stupid," but he denied calling her "stupid" or "ignorant." Although Landon testified that Shelbie similarly told him that what he did was "dumb" or "stupid," Shelbie did not recall ever doing so.

¶5. Shelbie also described an incident when she and Landon disagreed about whether to

2

seek medical treatment for Henry who had been vomiting or spitting up all day. She believed that Henry needed to go to the emergency room, but Landon disagreed. Landon testified that he believed that they could have taken Henry to the doctor's office early the next morning. Similarly, Landon's sister, who was a nurse, testified that she told Shelbie she did not think an emergency room visit was warranted. Nevertheless, Shelbie and Landon took Henry to the emergency room, where it was determined there was "nothing wrong with [Henry]."

¶6.     Shelbie described another incident when Landon used diesel fuel to kill grass that was growing around their home, and they disagreed about whether the fumes put Henry at risk. Shelbie testified that this disagreement led to an argument between her and Landon and that her mother ultimately cleaned up the area outside. Landon disputed that this disagreement caused an argument between them, and he recalled cleaning the area, not Shelbie's mother.

### Disagreement about Seeking Shelter During an Ice Storm

¶7.     In addition to their disagreements about parenting, testimony was presented that Landon and Shelbie disagreed about how long to stay at Shelbie's parents' house during an ice storm. According to Shelbie after several days of staying with her parents, she, Landon, and her parents had a discussion about whether they should stay longer. Shelbie was concerned about the roads, and her father recommended that they stay. But Landon disagreed. According to Shelbie, this disagreement resulted in an argument, and they ended up leaving. Shelbie's father testified that he believed that Landon put his family in danger by not staying. According to Landon, the discussion was only between him and Shelbie's father, and his decision to leave did not result in an argument. Although Landon testified that

3

they did not have trouble driving home, Shelbie disputed his testimony and further testified that they had to stay with one of Landon's relatives because they did not have water or electricity.

### *Disagreement about Seeking Shelter during a Hurricane*

¶8.  Similarly, testimony was presented that Landon and Shelbie had a disagreement about whether to take shelter at Shelbie's parents' house during a hurricane. Shelbie wanted to stay at her parents' house during the storm, but Landon disagreed. When Shelbie indicated that she and Henry would go without Landon, he became very angry and started yelling. Initially, Shelbie testified that Landon threw a remote and a car seat in her direction, but she later testified that he did not throw the car seat in her direction. According to Landon, he did not throw the remote anywhere near Shelbie or Henry, and he rolled the car seat across the floor. Then Landon went to the bathroom, beat his fists on the counter, and turned on the water.

¶9.  Shelbie put Henry in the car and called her father. As she was driving, Shelbie realized that Landon was following them in his vehicle. According to Shelbie, Landon drove around her and then stopped in front of her vehicle twice until she could not drive any farther. (Shelbie would later acknowledge that it was not a high-speed chase and that Landon's vehicle did not come in contact with her vehicle.) Then Landon got out of his vehicle and began beating on her window while wearing only a towel. Landon testified that he heard gravel spin when Shelbie left, and he indicated that he followed Shelbie in an attempt to protect Henry from a dangerous situation. Ultimately, Shelbie's father told her to call 911. After the incident, Shelbie's father and Landon discussed what had happened.

4

Shelbie's father testified that he believed Landon minimized the situation, and he was concerned that Landon's behavior would eventually become violent.

### Blame for Stolen Money and Wasting Milk

¶10. In addition to their disagreements, Shelbie testified that Landon blamed her for various things during their marriage. Shelbie testified that on one occasion, Landon blamed her for money that was stolen from their bank account because she made online purchases. And on another occasion, Landon blamed her for wasting milk because she did not want to give Henry milk that was two-hours old. She explained that the directions indicated that the milk was not to be consumed after one hour. Shelbie indicated that being blamed by Landon made her feel worthless.

### Lack of Communication with Family

¶11. Shelbie also testified that on one occasion, Landon did not greet anyone at a family member's wedding. Shelbie's mother testified that she was embarrassed because Landon had behaved terribly. According to Landon, he spoke with family and then worked on writing a sermon once he finished eating.

### Unwillingness to Participate in Marital Counseling

¶12. Finally, Shelbie testified that she asked Landon to go to counseling, but he refused. Landon admitted that he had initially refused to go to counseling but explained that the first time it was mentioned, Shelbie said, "You need to go see somebody and get some help." Although Landon believed that counseling was for "weak-minded" people, he agreed to counseling after their separation.

¶13. Shelbie suggested that the above-described incidents resulted in weight loss, hair loss, and anxiety. She testified that her hair loss and weight loss started several weeks after Henry's birth and lasted for approximately nine months. While Landon testified that he believed that Shelbie had postpartum depression, Shelbie and her mother disputed this claim. Shelbie had previously taken anxiety medication from the time she was in college until she became pregnant, and she was prescribed anxiety medication after Henry's birth. At the time of the trial, however, she was no longer taking the medication.

¶14. Finally, Shelbie's mother testified that she did not believe that Landon and Shelbie should remain married. Similarly, Shelbie's father testified that he did not want Shelbie to remain married to Landon, and he acknowledged that he told Shelbie that he did not think things would get any better.[2]

¶15. During the trial, Landon made a Rule 41 motion for an involuntary dismissal,[3] and the chancellor reserved his ruling. On September 6, 2022, the chancellor granted Landon's motion for an involuntary dismissal, finding that Shelbie had not proved by a preponderance of the evidence that she was entitled to a divorce on the ground of habitual cruel and inhuman treatment. According to the chancellor, the evidence "construed in the light most favorable to [Shelbie], demonstrate[d] a mere incompatibility amongst the parties." And "[t]o grant a divorce based on this limited set of facts would open a Pandora's Box for habitual cruel and inhuman treatment that could never be closed."

---

[2] At the advice of her parents, Shelbie recorded her phone conversations with Landon for two months; however, none of the recordings were admitted into evidence.

[3] M.R.C.P. 41.

6

¶16.	Subsequently, Shelbie filed a motion to alter or amend the final judgment and to reopen the record, and Landon filed a motion to modify the chancery court's temporary order. Ultimately, the chancellor denied Shelbie's motion and set the visitation schedule in accordance with the Guardian ad Litem's recommendation. Thereafter, Shelbie appealed.

## STANDARD OF REVIEW

¶17.	"This Court applies a limited standard of review to domestic-relations matters." *Johnson v. Johnson*, 357 So. 3d 1168, 1173 (¶12) (Miss. Ct. App. 2023) (citing *Kelley v. Zitzelberger*, 342 So. 3d 499, 503 (¶10) (Miss. Ct. App. 2022)). "We 'will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.'" *Id*. (quoting *Schmidt v. Schmidt*, 339 So. 3d 163, 174 (¶30) (Miss. Ct. App. 2022)). A chancellor's conclusions of law are reviewed de novo. *Id*.

## DISCUSSION

¶18.	We must decide whether the chancellor erred by granting Landon's motion for involuntary dismissal and finding that Shelbie had not proved that she was entitled to a divorce on the ground of habitual cruel and inhuman treatment.

¶19.	Under our rules, "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close

7

of all the evidence." M.R.C.P. 41(b).

¶20. A divorce on the ground of habitual cruel and inhuman treatment requires a party to show, by a preponderance of the evidence, conduct that either

> (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or

> (2) is so unnatural and infamous as to make the marriage revolting to the nonoffending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.

*Moss v. Moss*, 361 So. 3d 140, 146 (¶14) (Miss. Ct. App. 2022) (quoting *Harmon v. Harmon*, 141 So. 3d 37, 41 (¶14) (Miss. Ct. App. 2014)). Although Shelbie's complaint for divorce included spousal domestic abuse, Shelbie testified at trial that Landon did not physically abuse her or threaten physical abuse. However, "[a] finding of physical violence is not a prerequisite to establishing habitual cruel and inhuman treatment." *Id.* at (¶15) (quoting *Jackson v. Jackson*, 922 So. 2d 53, 56 (¶4) (Miss. Ct. App. 2006)).

¶21. While physical violence is not a prerequisite, "[t]he conduct in question must be 'more than mere unkindness, lack of affection, or incompatibility.'" *Baughman v. Baughman*, 350 So. 3d 271, 282 (¶31) (Miss. Ct. App. 2022) (quoting *Gwathney v. Gwathney*, 208 So. 3d 1087, 1089 (¶6) (Miss. Ct. App. 2017)). And "as a general rule, the habitual cruel and inhuman treatment must be shown to be routine and continuous; however, a single occurrence may be grounds for a divorce . . . ." *Id.* at 282 (¶31) (quoting *Boutwell v. Boutwell*, 829 So. 2d 1216, 1220 (¶14) (Miss. 2002)).

¶22. The cruelty required by the statute is "not such as merely to render the continuance of cohabitation undesirable, or unpleasant, but so gross, unfeeling and brutal as to render

8

further cohabitation impossible, except at the risk of life, limb, or health on the part of the unoffending spouse; and that such risk must be real rather than imaginary merely, and must be clearly established by the proof." *Id*. at 282 (¶32) (quoting *Kergosien v. Kergosien*, 471 So. 2d 1206, 1209 (Miss. 1985)). But the court must assess this cruelty using a subjective standard, not a reasonable-person standard:

> There is a dual focus on the conduct of the offending spouse and its impact on the offended spouse. This specific inquiry is subjective. Instead of using an ordinary, reasonable-person standard, we concentrate on the conduct's effect on the particular offended spouse.

*Id.* at 283 (¶32) (quoting *Gwathney*, 208 So. 3d at 1089 (¶6)). "Divorces based upon habitual cruel and inhuman treatment are necessarily fact-intensive and require a case-by-case analysis." *Rankin v. Rankin*, 323 So. 3d 1073, 1077 (¶9) (Miss. 2021) (quoting *Littlefield v. Littlefield*, 282 So. 3d 820, 827 (¶19) (Miss. Ct. App. 2019)).

¶23. After review, we agree with the chancellor's finding that "[t]he overwhelming weight of the evidence, construed in the light most favorable to [Shelbie], demonstrates a mere incompatibility amongst the parties." This decision was not an abuse of discretion. The bulk of the testimony presented at trial consisted of disagreements between Landon and Shelbie. As discussed, there was one incident that was described in which Landon followed Shelbie and Henry in his vehicle. However, testimony was presented that it was not a high-speed chase, and Landon's vehicle never came into contact with Shelbie's vehicle.

¶24. Shelbie suggested that she experienced hair loss, weight loss, and anxiety as a result of the issues between her and Landon. However, she also testified that she experienced these symptoms very soon after giving birth to her child. And while Shelbie testified that she was

9

prescribed anxiety medication, she previously had been prescribed anxiety medication from the time she was in college until she became pregnant. Further, no medical professional testified that Shelbie's anxiety was related to the issues between her and Landon. Nor were any medical records or counseling records admitted into evidence to support such a claim.

¶25. While Shelbie and Landon may have a difficult marriage, Shelbie did not prove by a preponderance of the evidence that she was entitled to a divorce based on habitual cruel and inhuman treatment. For these reasons, we affirm the chancellor's judgment.

¶26. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., McCARTY, SMITH AND EMFINGER, JJ., CONCUR. CARLTON, P.J., WESTBROOKS, McDONALD AND LAWRENCE, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**